T.C. Memo. 2012-277

UNITED STATES TAX COURT

AMY YU-WEN CHIEN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24401-10.                         Filed October 1, 2012.

<u>Timothy A. Doyle</u>, for petitioner.

<u>Karen Lynne Baker</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  The respondent (the "IRS") determined that the

petitioner ("Chien") is liable for deficiencies of $2,278, $6,192, and $3,845, for

tax years 2005, 2006, and 2007, respectively.  The deficiencies are predicated on

the following determinations:  (1) that the wages Chien received from the

[*2] International Monetary Fund ("IMF") were includable in her self-employment

income, thus resulting in self-employment-tax liability under section 1401, and (2)

that in calculating Chien's income-tax liability under section 1, there should be

deducted from her taxable income one-half of her self-employment-tax liability.[1]

The notice of deficiency also reflected a determination by the IRS that Chien is

liable for section-6662(a) penalties of $545.60, $1,238.40, and $769.00, for tax

years 2005, 2006, and 2007, respectively. All references to sections are to sections

of the Internal Revenue Code as in effect for the tax years at issue.

Chien concedes she is liable for the deficiencies. The only issue remaining

for resolution is whether she is liable for the section-6662(a) penalties. We hold

that she is not liable.

### FINDINGS OF FACT

Chien resided in California when she filed her petition. She was a U.S.

citizen during the years at issue.

While Chien was in college, her father prepared her tax returns. Chien's first

postcollege job was with the Peace Corps. Her income from the Peace Corps

---

[1]Although we refer to the tax imposed by sec. 1401 as the self-employment tax, it is treated as an income tax for purposes of sec. 6662 (which imposes a penalty on underpayments attributable to any substantial understatement of income tax). See sec. 1.6662-4(a), Income Tax Regs.; Cameron v. Commissioner, 98 T.C. 123, 126 (1992), aff'd without published opinion, 15 F.3d 1083 (9th Cir. 1994).

[*3] was below the threshold for filing tax returns. In 2004 she quit the Peace Corps and began working for Corestaff Services, L.P., a temporary staffing agency in Washington, D.C. The first tax return that she prepared herself was her 2004 federal-income-tax return. She prepared the return by consulting IRS instructions on the internet.

Chien joined the IMF as a staff assistant in July 2005. She and the IRS have stipulated that she was a "contract employee" of the IMF. She was initially hired at a salary of $44,540 per year.

Shortly after joining the IMF, Chien met with J. Carter Magill, an employee of the IMF who was conversant in taxation. The meeting lasted five minutes. Magill explained to Chien that she had to make an estimated-tax payment every quarter. Shortly after the meeting, Magill emailed Chien a spreadsheet that calculated her next estimated-tax payment. Because an estimated-tax payment is based on the taxpayer's tax liability for the year, see sec. 6654(b)(1), (d)(1)(A) and (B), (f)(1), the spreadsheet was based on Magill's calculation of Chien's tax liability for 2005. The amount of liability, as calculated on the spreadsheet, included the income tax imposed by section 1, see sec. 6654(f)(1), and the self-employment tax imposed by section 1401, see sec. 6654(f)(2), with Chien's 2005 IMF wages included in self-employment income. Had Chien understood that her

[*4] estimated-tax payment was based on her liability for the income tax imposed by section 1 and the self-employment tax imposed by section 1401, she would presumably have inferred from the spreadsheet that she would be liable for the self-employment tax. However, Chien had no such understanding of the estimated-tax regime. So she made no such inference from the spreadsheet. Other than the spreadsheet, Chien did not receive any other information from the IMF informing her that she was considered self-employed or that she was liable for the self-employment tax. (Later we discuss information Chien received at an IRS presentation on site at the IMF in January 2007.)

During 2005 Chien earned $20,899.58 for her services to the IMF.

On September 15, 2005, Chien made an estimated-tax payment of $2,906 for 2005.

On January 15, 2006, Chien made another estimated-tax payment of $2,906 for 2005.

On March 27, 2006, Chien prepared a Form 1040, U.S. Individual Income Tax Return, for the tax year 2005. She timely filed the return. In preparing the return, Chien consulted the IRS instructions for the Form 1040. She had been advised by Magill at their meeting that preparing her federal tax returns would be easy as long as she followed the IRS instructions. Line 27 of the Form 1040

**[\*5]** stated: "One-half of self-employment tax. Attach Schedule SE". In completing line 27, we find that Chien referred to the Form 1040 instructions for line 27. The instructions stated: "If you were self-employed and owe self-employment tax, fill in Schedule SE to figure the amount of your deduction." Believing that she was not self-employed, Chien typed "0" on line 27 and did not complete a Schedule SE, Self-Employment Tax. Line 58 of the Form 1040 stated: "Self-employment tax. Attach Schedule SE". Because she believed she was not self-employed, Chien typed "0" on line 58 and did not attach Schedule SE. Chien never read the IRS instructions for completing Schedule SE.[2] If she had read the instructions, she would have found this statement on the first page:

> You must pay SE tax on income you earned as a U.S. citizen employed by a foreign government (or, in certain cases, by a wholly owned instrumentality of a foreign government or an international organization under the International Organizations Immunities Act) for services performed in the United States, Puerto Rico, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands (CNMI), or the Virgin Islands. * * *

Thus, she would have learned that even though she was not "self-employed" in the usual meaning of the term, she might still be required to report and pay self-employment tax. Instead, Chien mistakenly thought because that she was not

---

[2]These instructions were entitled "Form SE-1, 2005 Instructions for Schedule SE (Form 1040)".

[*6] "self-employed" in the usual meaning of the term, she was not liable for the self-employment tax. She made this same mistake when she prepared her Forms 1040 for the 2006 and 2007 tax years.

The Form 1040 for 2005 reported wage income of $28,823, which included the $20,899.58 that Chien had received from the IMF and $7,923 in wages that she had received from Corestaff Services, L.P. On line 44, which is the place on Form 1040 for reporting the income-tax liability imposed by section 1, she reported a tax liability of $2,168. She reported that "Federal income tax withheld from Forms W-2 and 1099" was $613. She reported that the sum of her 2005 estimated-tax payments and the amount applied from her 2004 return was $2,906. (Her actual estimated-tax payments for 2005 totaled $5,812. The $2,906 amount that she reported apparently included only one of her two estimated-tax payments.) She reported she had made total payments of tax of $3,519 and requested a refund of $1,351. Attached to the Form 1040 was a Form W-2, Wage and Tax Statement, from Corestaff Services, L.P. It reflected that she had been paid wages of $7,923, that $613.39 of federal-income tax had been withheld from her wages, that $491.23 in Social-Security tax had been withheld from her wages, and that $114.88 in Medicare tax had been withheld from her wages. Also attached was a Form W-2 from the IMF. It reflected that she had been paid wages of $20,899.58.

**[\*7]** The word "NONE" was printed under "Federal income tax withheld". The word "NONE" was printed under "Social Security tax withheld". There was no entry for "Medicare tax withheld".

In 2006 Chien earned $50,017.07 for her services to the IMF.

On or about April 13, 2006, Chien made an estimated-tax payment of $2,771 for 2006.

On April 24, 2006, the IRS paid Chien a $4,257 refund of income tax for 2005. The payment was equal to the $2,168 of tax that Chien reported on her tax return minus her $6,425 of payments (i.e.: (1) withholding by Corestaff Services, L.P., of $613, (2) the September 15, 2005 estimated-tax payment of $2,906, and (3) the January 15, 2006 estimated-tax payment of $2,906).

On or about September 10, 2006, Chien made another estimated-tax payment of $2,000 for 2006.

On or about January 9, 2007, Chien made an estimated-tax payment of $2,000 for 2006.

On January 9, 2007, Shirley Kelly, a representative of the IRS, delivered a slide presentation to IMF employees to educate them about their tax responsibilities. Attendance at the presentation was not mandatory. Chien's duties caused her to be late to the presentation. She arrived only a few minutes

**[*8]** before the end, but she picked up a copy of the slides. Chien looked over the slides later. If Chien was knowledgeable about taxes, she could have realized from the slides that her IMF wages were subject to self-employment tax. The fourth slide advises that "In general, U.S. citizens employed at the International Monetary Fund are subject to both U.S. income tax and Social Security taxes on the gross amount of their wages." The eighth slide says:

> Employees of Embassies and
> International Organizations

> ### U.S. Citizens working in the U.S.

> Your employer files a W-2 form with the Internal
> Revenue Service, but does not withhold U.S. taxes.

> Your responsibilities for this wage income:

> --Report wages on Form 1040, Line 7
> --Complete schedule SE for self-employment tax on your
> wage income
> --Make Estimated Tax Payments

When asked at trial to explain how she could not have understood from the slides that she should have reported her IMF wages as self-employment income, Chien said that when she read the slides she would not have immediately understood the meaning of many of the terms used. For example, she testified--credibly--that she would not have understood the difference between income tax and self-

[*9] employment tax or the relationship between estimated-tax payments and self-employment tax. Also, we find that Chien missed the portion of the slide presentation in which Kelly had orally explained the two slides we referred to above. Chien did not later make a sustained effort to understand the slides in the sense that she did not analyze what was meant by the various phrases used. Nor did she analyze how the phrases used in the slide presentation corresponded to the phrases used in the Form 1040 and the instructions to the Form 1040. Instead, having missed most of the slide presentation, the lesson that Chien took away from the event was that she should follow the Form 1040 instructions.

On April 6, 2007, Chien prepared a Form 1040 for the 2006 tax year. She timely filed the return. Her reporting was similar in most respects to that on the Form 1040 she had filed for 2005. As on her 2005 return, she reported her IMF wages as wage income. She also reported that she had no self-employment income and did not owe self-employment tax.

The Form 1040 for 2006 reported wage income of $50,017, which was the $50,017.07 that Chien had received from the IMF. On line 44, which is the place on Form 1040 for reporting the income-tax liability imposed by section 1, she reported a tax liability of $6,839. She reported no self-employment tax. She did not attach Schedule SE. She reported that "Federal income tax withheld from

**[*10]** Forms W-2 and 1099" was zero.  She reported that the sum of the 2006 estimated-tax payments and the amount applied from her 2005 return was $6,771. (Her actual estimated-tax payments for 2006 totaled $6,771, i.e. $2,771 + $2,000 + $2,000.)  She reported that she had made total payments of $6,801 (including a $30 credit for payment of the federal telephone excise tax) and that she owed a balance of $38.  Attached to the Form 1040 was a Form W-2 from the IMF.  It reflected that she was paid wages of $50,017.07.  The word "NONE" was printed under "Federal income tax withheld".  The word "NONE" was printed under "Social Security tax withheld".  There was no entry for "Medicare tax withheld".

In 2007 Chien earned $29,441.05 for her services to the IMF.  She also received $2,500 in wages from a source not disclosed by the record.

On or about April 12, 2007, Chien made an estimated-tax payment of $2,000 for 2007.

In the middle of 2007 Chien left her position with the IMF to attend  school.

On or about June 16, 2007, Chien made an estimated-tax payment of $2,000 for 2007.

On or about September 8, 2007, Chien made another estimated-tax payment of $2,000 for 2007.

**[*11]** On December 10, 2007, the IRS paid Chien a $2.10 refund of income tax for 2006. The refund was not equal to the tax reported on the Form 1040 (i.e. $6,839) minus estimated-tax payments (i.e. $2,771 + $2,000 + $2,000) because, in calculating the refund, the IRS had made other allowances for various payments, refundable credits, and interest.

On April 7, 2008, Chien prepared her Form 1040 for the 2007 tax year. She filed the return timely. As on her 2005 and 2006 returns, she reported her IMF wages as wage income. She also reported that she had no self-employment income and did not owe self-employment tax.

The Form 1040 for 2007 reported wage income of $31,941, which comprised the $29,441 that she had received from the IMF and the $2,500 in other wage income. On line 44, which is the place on Form 1040 for reporting the income-tax liability imposed by section 1, she reported a tax liability of $3,093 (before subtracting a $2,000 credit). She reported no self-employment tax. She did not attach Schedule SE. She reported that "Federal income tax withheld from Forms W-2 and 1099" was zero. She reported that the sum of the 2007 estimated-tax payments and the amount applied from her 2006 return was $2,000. (Her actual estimated-tax payments totaled $6,000, i.e. $2,000 + $2,000 + $2,000). The Form 1040 reported that she had made total payments of $2,000 (the sum of her

**[*12]** reported estimated-tax payments but not the $2,000 credit), and it requested a refund of $907. Attached to the Form 1040 was a Form W-2 from the IMF. It reflected that she had been paid wages of $29,441.05. The word "NONE" was printed under "Federal income tax withheld". The word "NONE" was printed under "Social Security tax withheld". There was no entry for "Medicare tax withheld".

On May 5, 2008, the IRS paid Chien a $4,907 refund of her 2007 income taxes. This amount was equal to the $1,093 that she reported as her tax liability on her Form 1040 minus her $6,000 in estimated-tax payments.

OPINION

The Federal Insurance Contributions Act ("FICA") tax is imposed on "wages" paid with respect to "employment". Secs. 3101(a) and (b), 3111(a) and (b). The employer is liable for half of the FICA tax. Sec. 3111(a) and (b). The employee is liable for the other half of the FICA tax, sec. 3101(a) and (b), but the employer must withhold this portion of the tax from the employee's wages as it pays the employee, sec. 3102(a). Amounts so withheld are credited by the IRS to the account of the employee. See Slodov v. United States, 436 U.S. 238, 243 (1978). The term "employment" is defined by section 3121(b) as:

**[\*13]** any service, of whatever nature, performed (A) by an employee for the person employing him, irrespective of the citizenship or residence of either, (i) within the United States, or (ii) on or in connection with an American vessel or American aircraft under a contract of service which is entered into within the United States or during the performance of which and while the employee is employed on the vessel or aircraft it touches at a port in the United States, if the employee is employed on and in connection with such vessel or aircraft when outside the United States, or (B) outside the United States by a citizen or resident of the United States as an employee for an American employer (as defined in subsection (h)), or (C) if it is service, regardless of where or by whom performed, which is designated as employment or recognized as equivalent to employment under an agreement entered into under section 233 of the Social Security Act; except that such term shall not include--* * * (15)  service performed in the employ of an international organization * * *

An international organization is defined by section 7701(a)(18) as "a public international organization entitled to enjoy privileges, exemptions, and immunities as an international organization under the International Organizations Immunities Act (22 U.S.C. sec. 288-288f)".  It is undisputed that the IMF is such an international organization.  Under section 3121(b)(15), service performed in the employ of an international organization such as the IMF is not "employment".  Payment for such service is therefore not subject to the FICA tax.

The self-employment tax is a tax on the self-employment income of an individual.  Sec. 1401(a) and (b).  Self-employment income is defined as net

[*14] earnings from self-employment.  Sec. 1402(b).  Net earnings from self-employment is generally defined as income from a "trade or business", minus deductions.  Sec. 1402(a).  The term "trade or business" is generally defined as excluding "the performance of service by an individual as an employee", but the performance of service by an individual as an employee is considered a "trade or business" if it is a "service described in * * * [section 3121(b)(15)] performed in the United States * * * by a citizen of the United States".  Sec. 1402(c)(2)(C).  Because service performed by an employee of the IMF is undisputedly described in section 3121(b)(15), the performance of service within the United States by a U.S.-citizen employee of the IMF is considered a "trade or business".  Income from such service is therefore subject to the self-employment tax.  See Braddock v. Commissioner, 95 T.C. 639, 643-644 (1990) (service performed for International Telecommunications Satellite Organization); Smart v. United States, 222 F. Supp. 65 (S.D.N.Y. 1963) (service performed for United Nations), aff'd, 332 F.2d 283 (2d Cir. 1964).

One-half of the amount of self-employment-tax liability for the year is deducted in calculating taxable income for purposes of the income tax imposed by section 1.  Sec. 164(f)(1).

**[*15]** The IRS contends that Chien is liable for the section-6662(a) penalty for each of her tax years 2005, 2006, and 2007 because, it contends, her underpayments of tax for these three years were due to negligence or disregard of rules or regulations and her underpayment of tax for 2006 was due to a substantial understatement of income tax.

Section 6662(a) imposes an accuracy-related penalty equal to 20% of an underpayment attributable to a substantial understatement of income tax or negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1) and (2). A substantial understatement of income tax exists if (1) the understatement is greater than 10% of the income tax required to be shown on the return, and (2) the understatement is greater than $5,000. Sec. 6662(d)(1)(A). Negligence includes any failure to make a reasonable attempt to comply with the tax laws. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence is strongly indicated where a taxpayer fails to make a reasonable attempt to determine the correctness of a deduction, credit, or exclusion that would seem to a reasonable person to be "too good to be true". Sec. 1.6662-3(b)(1)(ii), Income Tax Regs.

The accuracy-related penalty does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion. Sec. 6664(c)(1). In

**[\*16]** determining whether the taxpayer acted with reasonable cause and in good faith, the guidance in section 1.6664-4(b)(1), Income Tax Regs., is applicable:

> Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer. * * *

The IRS has the burden of production under section 7491(c) with respect to the accuracy-related penalty. To meet that burden, the IRS must come forward with sufficient evidence that it is appropriate to impose this penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Although the IRS bears the burden of production with respect to the accuracy-related penalty, the IRS "need not introduce evidence regarding reasonable cause, substantial authority, or similar provisions." Id. The taxpayer "bears the burden of proof with regard those issues." Id.

The IRS is correct that for the tax year 2006 Chien had an underpayment attributable to a substantial understatement of income tax. The understatement of income tax on her 2006 return was $6,192. This is greater than 10% of the tax required to be shown on the return (i.e. $1,303.10, or 10% of $13,031). It is also greater than $5,000. Therefore Chien had a substantial understatement of income tax for 2006.

[*17] The IRS also contends that Chien was negligent or disregarded rules and regulations in preparing her returns for all three tax years. The IRS has multiple theories as to how Chien was negligent. First, Chien failed to seek further advice from Magill to clarify whether she was liable for the self-employment tax. Second, Chien attended Kelly's presentation at the IMF and/or reviewed the slides; thus she should have known that she was liable for self-employment tax. Third, the tax Chien reported was far exceeded by her estimated-tax payments, and she received refunds for all three tax years; thus she should have realized that she had likely misreported her tax liabilities. For these and other reasons, the IRS also contends that Chien did not have reasonable cause for failing to report her IMF wages as self-employment income and did not act in good faith with respect to this omission.

We find that Chien had reasonable cause for failing to report her IMF wages as self-employment income and that she acted in good faith with respect to this omission within the meaning of section 6664(c)(1). Chien's inexperience was the reason she failed to understand--from her interactions with Magill, from the IMF slide presentation, or from the disparity between her estimated-tax payments and her reported tax liability--that she was liable for the self-employment tax on her

**[\*18]** IMF wages. She consulted the instructions for the Form 1040.[3] She formed the impression that she did not need to report her wages as self-employment income on the Form 1040 and the Schedule SE, because, in the words of the Form 1040 instructions, she was "not self-employed." Chien made an honest mistake in applying the instructions. Thus, she qualified for the reasonable-cause-and-good-faith exception to the section-6662(a) penalties.

To reflect the foregoing and concessions,

<u>Decision will be entered for respondent as to deficiencies and for petitioner as to the section 6662(a) penalties</u>.

_____

[3]The IRS cites <u>Johnson v. Commissioner</u>, 620 F.2d 153, 155 (7th Cir. 1980), <u>aff'g</u> T.C. Memo. 1978-426, for the proposition that "a taxpayer may not rely on an informal IRS publication if it is inconsistent with the statute." The issue in <u>Johnson</u> was the proper tax treatment of a transaction, not whether the taxpayer was liable for the accuracy-related penalty. It is therefore distinguishable.