T.C. Memo. 2018-107

UNITED STATES TAX COURT

MAGLOIRE K. AYISSI-ETOH AND KATRINA D. SHARPE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 31090-15.                              Filed July 9, 2018.

Magloire K. Ayissi-Etoh and Katrina D. Sharpe, pro sese.

Rachel L. Rollins and Jeffrey E. Gold, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, Judge: With respect to petitioners' 2012 and 2013 taxable years, the Internal Revenue Service (IRS or respondent) determined the following deficiencies and accuracy-related penalties:

**[*2]**

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2012 | $25,083 | $5,017 |
| 2013 | 49,028 | 9,806 |

The issues for decision are whether petitioners: (1) underreported a taxable refund of State income tax; (2) are entitled to deductions claimed on Schedules C, Profit or Loss From Business; (3) are entitled to deductions claimed on Schedules A, Itemized Deductions, for charitable contributions and unreimbursed employee expenses; (4) are liable for self-employment tax on wages received from an international organization; and (5) are liable for accuracy-related penalties. We resolve all issues in respondent's favor.[1]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated by this reference. Petitioners resided in Maryland when they petitioned this Court.

During 2012-2013 petitioner husband worked full time for the International Monetary Fund (IMF) in Washington, D.C., serving as an adviser to an executive

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect for the tax years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*3] director. For those services he received wages of $62,238 in 2012 and $206,811 in 2013. The IMF did not withhold Federal income tax or employment tax from these wages.

In 2009 petitioner husband formed American Management & Consulting LLC (AMC). He allegedly performed consulting services through AMC, but his testimony about the nature and timing of these services was vague. He first testified that his consulting involved pension plans but later testified that AMC was involved in attempting to build an oil refinery in Haiti. AMC reported no gross receipts during 2012 or 2013 or (as far as the record shows) in any other year.

In November 2012 petitioner husband formed, and during 2012-2013 he was chairman of, American Management & Consulting Foundation, Inc. (AMC Foundation). Petitioners during 2012-2013 allegedly made charitable contributions to AMC Foundation, which purportedly directed those funds to projects in sub-Saharan Africa. At no time during 2012-2013 was AMC Foundation recognized by the IRS as a tax-exempt charitable organization under section 501(c)(3).

During 2012-2013 petitioner wife worked for Leidos, a defense contractor. She paid certain work-related travel expenses, all of which were fully reimbursed by her employer. She occasionally worked from a home office, but petitioners

**[\*4]** also used that room for a variety of personal and family purposes. Petitioner wife had no involvement with AMC or the AMC Foundation.

Petitioners paid Maryland income taxes during the years at issue. In 2013 they received a refund of $9,323 from Maryland. The parties have stipulated that this amount constituted a refund of payments petitioners had made toward their 2012 Maryland income tax liability.

Petitioners timely filed Forms 1040, U.S. Individual Income Tax Return, for 2012 and 2013. On those returns they reported the wages petitioner husband had received from the IMF, but they did not report or pay any self-employment tax on these wages. On their 2013 return they reported $6,601 as a taxable refund of State income tax.

Petitioners included in each return a Schedule C for AMC. On these Schedules C they reported zero gross receipts for each year and expenses as follows:

| Item | 2012 | 2013 |
|---|---|---|
| Meals and entertainment | $110 | $150 |
| Taxes and licenses | 300 | 300 |
| Supplies | 265 | 300 |
| Repairs and maintenance | 60 | 40 |
| Office expenses | 60 | 50 |
| Depreciation and sec. 179 expense | 200 | --- |
| Advertising | 125 | 124 |
| Travel | 2,486 | 11,700 |

| **[*5]** | Car and truck expenses | 17,633 | 20,527 |
| | Expenses for business use of home | 12,370 | 5,466 |
| | Other expenses | 140 | 250 |
| | Utilities | 2,140 | 1,380 |
| | Total | 35,889 | 40,287 |

Petitioners also included in each return a Schedule A, on which they reported (among other things) the following items:

| Item | 2012 | 2013 |
|------|------|------|
| Cash charitable contributions | $21,300 | $55,400 |
| Noncash charitable contributions | 14,000 | 9,280 |
| Unreimbursed employee expenses | 23,288 | 15,282 |

The IRS selected both returns for examination. As a result of this examination the IRS: (1) determined that petitioners in 2013 had received a taxable State income tax refund of $7,165 (or $564 more than they had reported); (2) disallowed all claimed Schedule C deductions for lack of substantiation and because AMC was not "an activity engaged in for profit" within the meaning of section 183(a); (3) disallowed for lack of substantiation all claimed deductions for cash charitable contributions and all claimed deductions for noncash charitable contributions in excess of $250 annually; (4) disallowed for lack of substantiation and business purpose most claimed deductions for unreimbursed employee expenses; (5) determined that petitioner husband was liable for self-employment tax, in the amounts

[*6] of $7,644 and $19,638, for 2012 and 2013, respectively, on his wages from the IMF; and (6) determined accuracy-related penalties for both years.

On September 9, 2015, the IRS issued petitioners a timely notice of deficiency setting forth these adjustments, and they timely petitioned this Court for redetermination. At the close of trial the Court directed the parties to file seriatim post-trial briefs. Petitioners failed to file a brief as directed by the Court.[2]

OPINION

I.     Burden of Proof

The IRS' determinations in a notice of deficiency are generally presumed correct, and taxpayers bear the burden of proving them erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners do not contend (and could not plausibly contend) that they have satisfied the requirements of section 7491 for shifting the burden of proof. See Rule 142(a)(1) and (2). Accordingly, the burden of proof for all factual issues remains with them.

---

[2]Because petitioners failed to file a brief as directed by the Court, we could enter decision against them for that reason alone. See Rule 123(b); Stringer v. Commissioner, 84 T.C. 693, 708 (1985), aff'd without published opinion, 789 F.2d 917 (4th Cir. 1986).

[*7] II.        State Income Tax Refund

Gross income generally includes income from whatever source derived.  See sec. 61(a); Commissioner v. Glenshaw Glass, 348 U.S. 426 (1955).  Under the tax benefit rule, gross income may include the recovery of an amount that gave rise to a tax benefit in a prior year.  See sec. 111 (excluding from gross income the recovery of amounts deducted in a prior year that gave rise to no tax benefit); Maines v. Commissioner, 144 T.C. 123, 130-131 (2015).

On their 2012 Federal income tax return petitioners claimed and were allowed a deduction of $7,165 for State and local income taxes paid to Maryland.  In 2013 they received from Maryland a refund of $9,323 attributable to 2012.  Respondent contends that for 2013 they have gross income of $7,165, the amount of deduction allowed for the prior year.

At trial petitioners contended that $2,722 of the refund corresponded to a tax payment they made to Maryland in 2013, leaving only $6,601 as a taxable recovery of the deduction claimed for 2012.  As respondent notes, petitioners have supplied no evidence concerning the amount of their 2013 tax payment to Maryland.  Moreover, because they neglected to file a post-trial brief, they have not rebutted respondent's alternative argument that the refund must be allocated pro rata across all tax payments.  We conclude that petitioners have not carried their

**[\*8]** burden of showing error in respondent's determination that for 2013 they under-reported by $564 the taxable refund they received from Maryland.

III.    Schedule C Expenses

Deductions are a matter of legislative grace. The taxpayer bears the burden of proving that reported business expenses were actually incurred and were "ordinary and necessary." Sec. 162(a); Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). The taxpayer must substantiate the expenses underlying his claimed deductions by keeping and producing records sufficient to enable the IRS to determine the correct tax liability. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. The failure to keep and present such records counts heavily against a taxpayer's attempted proof. Rogers v. Commissioner, T.C. Memo. 2014-141, 108 T.C.M. (CCH) 39, 43.

In order to deduct business expenses under section 162, the taxpayer must carry on a trade or business. An activity is a trade or business if the taxpayer is engaged in the activity for the primary purpose of making a profit. Absent that showing, expenses are deductible only to the extent of income derived from the activity. Sec. 183(b)(2); see Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), aff'd without published opinion, 647 F.2d 170

[*9] (9th Cir. 1981). The existence of a profit motive turns on the taxpayer's subjective intent, but in discerning that intent we give less weight to self-serving statements than to objective facts. Sec. 1.183-2(a), Income Tax Regs. Relevant objective factors include (among other things) the time, effort, and manner in which the taxpayer carries on the activity and whether the taxpayer has had a history of financial success in carrying on the activity or related activities. Sec. 1.183-2(b), Income Tax Regs.

Petitioners have provided no evidence, other than petitioner husband's self-serving testimony, that AMC was operated for the purpose of making a profit. It had no gross receipts during 2012 or 2013, and (as far as the record shows) it generated no profit in any year. Petitioners have supplied no evidence that AMC had a bank account, books and records, business plans, marketing strategies, or customer lists. There is no evidence that AMC carried on business activity during the years at issue or held itself out as a going concern. Because AMC had no gross income during 2012 or 2013, the IRS properly denied under section 183(a) all deductions claimed on petitioners' Schedules C.

Even if petitioner husband had a profit motive in operating AMC, we would deny the claimed Schedule C deductions for lack of substantiation. Petitioners produced no evidence whatever to substantiate the deductions claimed for taxes

[*10] and licenses, repairs and maintenance, supplies, office expense, depreciation, advertising, utilities, meals and entertainment, "other expenses," or home office expense.[3]  Their claimed car and truck expenses are subject to the strict substantiation requirements of section 274(d).  See sec. 280F(d)(4) (including passenger automobiles as "listed property"); Fernandez v. Commissioner, T.C. Memo. 2011-216.  Petitioners produced a rental car receipt, which had no apparent connection to AMC's business, and a mileage log.  The mileage log vaguely describes almost every trip as involving a "business presentation" or "meeting."  These documents fall far short of satisfying the strict requirements of section 274(d).  See sec. 1.274-5T(a), (b), and (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46017 (Nov. 6, 1985).  We accordingly sustain respondent's disallowance of all Schedule C deductions claimed with respect to AMC.

IV.   Schedule A Deductions

   A.   Charitable Contributions

Petitioners claimed deductions for cash charitable contributions of $21,300 and $55,400 and for noncash charitable contributions of $14,000 and $9,280 in

---

[3]The IRS disallowed the deductions claimed for home office expense, but allowed a larger deduction for home mortgage interest on Schedule A for each year.

**[*11]** 2012 and 2013, respectively. For each year respondent disallowed all of the cash contributions and all but $250 of the noncash contributions.

Section 170 allows as a deduction any contribution made within the taxable year to a charitable organization. Sec. 170(a)(1), (c). Such deductions are allowable only if the taxpayer satisfies statutory and regulatory substantiation requirements. See sec. 170(a)(1); sec. 1.170A-13, Income Tax Regs. The nature of the required substantiation depends on the size of the contribution and on whether it is a gift of cash or property.

For contributions of any kind, the taxpayer must maintain reliable records indicating (among other things) the donee organization and the value and date of the contribution. See sec. 1.170A-13(a) and (b), Income Tax Regs. For all contributions of property, the taxpayer must maintain reliable written records that include the name of the donee, the date and location of the contribution, and a description of the property "in detail reasonable under the circumstances." Sec. 1.170A-13(b)(2)(ii)(A) through (C), Income Tax Regs. The taxpayer must also maintain records to establish "the fair market value of the property at the time the contribution was made" and "the method utilized in determining the fair market value." Id. subdiv. (ii)(D).

[*12] For all contributions valued at $250 or more, the taxpayer must obtain a "contemporaneous written acknowledgment" (CWA) from the donee.  Sec. 170(f)(8).  The CWA must include (among other things) a description of any property other than cash contributed.  Id. subpara. (B)(i).  In the absence of a CWA meeting the statute's requirements, "[n]o deduction shall be allowed."  Id. subpara. (A).

Additional substantiation requirements are imposed for contributions of property with a claimed value exceeding $500.  Sec. 170(f)(11)(B).  Still more rigorous substantiation requirements are imposed for contributions of property with a claimed value exceeding $5,000.  Id. subpara. (C).  In determining whether donations of property exceed these thresholds, "similar items of property" (other than cash and publicly traded securities) must be aggregated.  See id. subpara. (F).  The term "similar items of property" is defined to mean "property of the same generic category or type," such as clothing or electronic equipment.  Sec. 1.170A-13(c)(7)(iii), Income Tax Regs.

If contributed property is valued in excess of $500, the taxpayer must include with his return "a description of such property and such other information as the Secretary may require."  Sec. 170(f)(11)(B).  The Secretary has prescribed regulations requiring that the taxpayer maintain records establishing "[t]he manner of

[*13] acquisition" of the property (e.g., by purchase, gift, or inheritance), the approximate date of the property's acquisition, and the cost or adjusted basis of the property. Sec. 1.170A-13(b)(3)(i), Income Tax Regs.; see Gaerttner v. Commissioner, T.C. Memo. 2012-43, 103 T.C.M. (CCH) 1223, 1226.

If property or similar items of property are valued in excess of $5,000, the taxpayer must substantiate the value of the property with a "qualified appraisal of such property." Sec. 170(f)(11)(C). He must also attach to his return a fully completed "appraisal summary" on Form 8283, Noncash Charitable Contributions. See Costello v. Commissioner, T.C. Memo. 2015-87, 109 T.C.M. (CCH) 1441, 1445; sec. 1.170A-13(c)(2)(i)(B), Income Tax Regs.

The bulk of petitioners' alleged cash contributions ($14,100 for 2012 and $40,600 for 2013) were purportedly made to AMC Foundation. But AMC Foundation was not a qualified organization under section 170(c) during the years at issue. The IRS did not issue a determination letter recognizing AMC Foundation as tax-exempt under section 501(c)(3) until May 2016, with an effective date of exemption of November 23, 2015. Petitioners therefore were not entitled to deduct any contributions made to it during 2012 or 2013. See sec. 170(c)(2).[4]

---

[4]Petitioners in any event did not substantiate the alleged gifts. We question the authenticity of the "receipts" that petitioner husband signed in his capacity as

(continued...)

**[*14]** The balance of the claimed cash contributions consisted of alleged weekly donations to "St. Martin's Church." To substantiate these gifts petitioners supplied no receipt or other document from the church, but only a self-created spreadsheet listing the amount and date of each alleged contribution. We do not find this spreadsheet to be a reliable record, see sec. 1.170A-13(a)(2)(i), Income Tax Regs., and we find that it does not substantiate the purported contributions. Accordingly, we sustain respondent's disallowance of all claimed cash contributions.

Petitioners also claimed deductions for contributions to Goodwill Industries (Goodwill) of clothing and electronic equipment valued at $14,000 for 2012 and $9,280 for 2013. The only evidence petitioners offered to substantiate these gifts was a self-prepared spreadsheet, a Goodwill "valuation guide," and several partially completed Forms 8283. The Forms 8283 were not signed by any Goodwill official, and petitioners produced no receipt, CWA, or other document from Goodwill acknowledging any of these alleged gifts.

The purported donations--including three dozen suits valued up to $600 apiece, three dozen pairs of basketball shoes valued up to $280 apiece, a dozen winter jackets, and 15 pairs of jeans--are implausible on their face. All items of

---

[4](...continued)
chairman of AMC Foundation. Petitioners produced no checks, bank records, or CWAs meeting the requirements of section 170(f)(8)(B).

**[*15]** clothing and electronic equipment must be aggregated for purposes of determining satisfaction of the relevant substantiation requirements. Petitioners have woefully failed to satisfy those requirements for gifts of this magnitude. See sec. 170(f)(11)(B) and (C); sec. 1.170A-13(b)(2)(i), (ii)(B), (b)(3)(i)(A), (c)(2), Income Tax Regs. Respondent allowed petitioners a deduction of $250 for non-cash contributions each year. We find no justification for allowing anything more.

B.    Unreimbursed Employee Expenses

Section 162 permits employees to deduct ordinary and necessary expenses paid or incurred in the course of employment, but only to the extent the employee is not entitled to reimbursement from his or her employer. See Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), aff'g T.C. Memo. 1984-533; Lucas v. Commissioner, 79 T.C. 1, 6-7 (1982). For both years at issue petitioners filed Form 2106-EZ, Unreimbursed Employee Business Expenses. For 2012 they claimed a deduction of $23,288, of which $9,158 was for travel expenses and $14,130 was for other expenses. For 2013 they claimed a deduction of $15,282, of which $7,910 was for travel expenses and $7,372 was for other expenses. The IRS disallowed all deductions claimed for 2012 and all but $90 of the deductions claimed for 2013.

**[*16]** All of the expenses at issue were allegedly connected to petitioner wife's employment at Leidos, where she worked as a senior compensation analyst.  At trial she testified that her employer fully reimbursed her for all business travel expenses.  She stated that she did not recognize any of the trips listed in the mileage logs produced to substantiate these deductions.

Petitioners contend that some of the expenses at issue were attributable to petitioner wife's use of a home office.  But she credibly testified that she used that space for personal and family purposes, and the Code expressly prohibits a home office deduction for such mixed-use spaces.  See sec. 280A(c)(1).  We accordingly sustain respondent's determinations regarding deductions for unreimbursed employee business expenses.

## V.    Self-Employment Taxes

Petitioners challenge the IRS' determination that petitioner husband is liable for self-employment taxes on his wages from the IMF.  Self-employment taxes apply to all net earnings from a "trade or business" as defined in section 1402.  See sec. 1402(a), (c) (cross-referencing sec. 162).  Section 1402(c)(2) generally excludes from the definition of a "trade or business" services performed by a taxpayer as an employee.  But this exclusion does not apply to services performed in

**[\*17]** the United States by an employee of an "international organization." See sec. 1402(c)(2)(C) (cross-referencing sec. 3121(b)(15) and (y)).

Petitioner husband does not dispute that he received wages from the IMF, as shown on his Forms W-2, Wage and Tax Statement. Nor does he dispute that the IMF is an "international organization." See sec. 7701(a)(18); Chien v. Commissioner, T.C. Memo. 2012-277, 104 T.C.M. (CCH) 385, 388. Instead, he asserts that his wages are exempt from self-employment tax because they were attributable to services that he performed abroad. See sec. 1402(c)(2)(C).

There is no factual support for this assertion. At trial petitioner husband supplied receipts for one trip he took to Cameroon by way of Paris. This documentation does not establish that he took this trip in the service of the IMF or that it had any business purpose whatever. We find no credible evidence that he performed services for the IMF at any location other than his office in Washington, D.C. We thus sustain respondent's determination that petitioner husband is liable for self-employment taxes on all wages he received from the IMF during 2012 and 2013. See Chien, 104 T.C.M. (CCH) at 388.

VI. Penalties

The Code imposes a 20% penalty on the portion of any underpayment of tax attributable to "[n]egligence or disregard of rules and regulations" or "[a]ny sub-

[*18] stantial understatement of income tax." Sec. 6662(a) and (b)(1) and (2). "Negligence includes "any failure to make a reasonable attempt to comply" with the internal revenue laws, and "disregard" includes "any careless, reckless, or intentional disregard." Sec. 6662(c). An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A).

Under section 7491(c) respondent bears the burden of production with respect to the liability of an individual for any penalty, thereby requiring him to come forward with sufficient evidence indicating that imposition of the penalty is appropriate. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Respondent has satisfied his burden of production as to negligence by showing that petitioners failed to maintain adequate books and records regarding AMC and failed to properly substantiate their charitable contributions. See sec. 1.6662-3(b)(1), Income Tax Regs.

In Graev v. Commissioner, 149 T.C. ___ (Dec. 20, 2017), supplementing and overruling in part 147 T.C. 460 (2016), we held that respondent's burden of production under section 7491(c) includes establishing compliance with section 6751(b), which requires that penalties be "personally approved (in writing) by the immediate supervisor of the individual making such determination." See Chai v.

[*19] Commissioner, 851 F.3d 190, 217 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42. The record includes a copy of a Civil Penalty Approval Form, executed by the immediate supervisor of the revenue agent who examined petitioners' 2012 and 2013 returns, which approved imposition of accuracy-related penalties against petitioners for both years. We thus conclude that respondent has met his burden of production.

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and that he acted in good faith with respect to, the underpayment. The decision as to whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that may signal reasonable cause and good faith "include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Ibid.

Petitioners have not shown reasonable cause. They presented no credible evidence that any Schedule C expenses were actually paid. They woefully failed to substantiate their purported charitable contributions and unreimbursed em-

[*20] ployee business expenses. Petitioner husband's argument for avoiding payment of self-employment tax did not pass the straight-face test.

Petitioners did not seek advice from a qualified tax professional, but relied entirely on tax preparation software. That software "is only as good as the information one puts into it," and it provides no general defense to taxpayer negligence. See Bunney v. Commissioner, 114 T.C. 259, 267 (2000). We find that petitioners were negligent in preparing their 2012 and 2013 returns and that no portion of their respective underpayments met the "reasonable cause" exception.

We also find that the underpayments at issue are attributable to substantial understatements of income tax for which reasonable cause has not been shown. The deficiencies in petitioners' 2012 and 2013 income tax, which we have sustained in full, are $25,083 and $49,028, respectively. There being no dispute over any claimed refundable credits, those deficiency amounts equal petitioners' understatements of income tax. See generally Gassoway v. Commissioner, T.C. Memo. 2015-203. Petitioners reported tax due of $3,986 and $39,313 on their 2012 and 2013 returns, respectively. The deficiency amounts clearly exceed both $5,000 and 10% of the amounts required to be shown on their returns. See sec. 1.6662-4(b)(3), Income Tax Regs. As a result, petitioners' understatements of income tax are substantial within the meaning of section 6662(d)(1)(A).

**[*21]** To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.